MAMIE PINNELL FRANCIS and LAURA PINNELL HUNTER, Respondents, v. SUPREME LODGE ANCIENT ORDER OF UNITED WORKMEN, Appellant.

St. Louis Court of Appeals, July 12, 1910.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Not Governed by General Insurance Laws: Action on Policy: Untrue Warranties and Representations Defeat Recovery. Contracts of a mututal benefit association are not governed by the statute of Missouri touching warranties and representations in effecting insurance, and the association may invoke the doctrine that a representation as to good health is so material to the risk as to amount to a warranty, which, if untrue when made, will defeat a recovery.

2. WAIVER: Definition of Waiver: Intent. A "waiver" is the intentional abandonment or relinquishment of a known right, the matter of intention being the essential element.

3. FORFEITURES: Abhorred by Equity and Law: Fraternal Beneficiary Associations: Insurance. Equity abhors forfeitures and they are not favorities even in courts of law, the policy of the law being to refuse to aid the forfeiture of a right once

established; and the general doctrine obtains in the law of insurance that valuable rights will not be denied on the ground of forfeiture, if there is slight evidence which sufficiently indicates a purpose on the part of the one in whose favor the forfeiture is stipulated not to enforce it.

4. INSURANCE: Fraternal Beneficiary Associations: Forfeitures: Aceptance of Premium after Forfeiture. Though a forfeiture of an insurance contract has taken place, it will be treated as waived and the insurance reinstated, if insurer accepts a premium thereafter falling due and retains it for a sufficient length of time to indicate that it considered the insurance still in force.

5. FRATERNAL BENEFICIARY ASSOCIATIONS: Forfeiture: Waiver: Acceptance of Past Due Premiums: Effect of Subsequent Application for Reinstatement by Insured: Facts Stated. Where a mutual benefit association, after a certificate was forfeitable for non-payment of an assessment, received the assessment, writing insured that it would hold the money in abeyance until he furnished the health certificate required by the contract to reinstate him, and thereafter and without objection accepted payment of a subsequent assessment, it waived the forfeiture, and the fact that insured later furnished a health certificate was not a waiver of his right to insist that the insurance was in force, though he stated in such certificate that the insurance had been forfeited and requested reinstatement.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Jos. E. Riggs* and *John Sullivan* for appellant.

(1)  Mr. Pinnell's insurance was null and void November 30th.  Where the constitution and by-laws provide that the failure to pay dues for the month for which they are due, operates as a suspension of the member, such failure *ipso facto,* suspends the member without any action of the board in the matter, and he is not entitled to notice, or a hearing before suspension for failure to pay an assessment.  Smith v. Woodmen of World, 179 Mo. 119; Lavin v. A. O. U. W., 104 Mo. App. 1;

McMahon v. Maccabees, 151 Mo. 522. (2) Mr. Pin-
nell was bound by and bound to know the by-laws as
affecting his contract including penalty of non-payment
of the November assessment. His certificate was null
and void. McMahon v. Maccabees, 151 Mo. 592. (3)
Mr. Pinnell's certificate was void after November 30,
1906. To secure protection again with appellant he had
to. comply with the agreements required therefor. as
such were as necessary as to make any kind of a con-
tract. Jenkins v. Insurance Co., 171 Mo. 375;. Kellaw
Life Ins. Co., 95 Mo. App. 627. (4) Appellant, it is
agreed herein, is a fraternal beneficiary society. As
such it is exempt from provision 7974, referring to mis-
representations. A misrepresentation, or false war-
ranty, made to secure reinstatement after a certificate
has elapsed, thus voids the new contract in an organi-
zation of the nature of appellant. Jenkins v. Life Ins.
Co., 171 Mo. 375. (5) Mr. Pinnell had no rights of
insurance with appellant February 6th. Whatever
rights he had on July 7, 1907, when he died, were only
such as he secured through his new agreement with ap-
pellant society of February 6th. The statement of Mr.
Pinnell on February 6th, for the society's action on en-
tering into a new contract, that he was in "sound bodily
health," was false; was a fraud upon appellant because
of the fact that for two and one-half years he had been
a sick man, and on July 7th died of the illness of three
years' standing. Such false statement was a breach of
warranty, and being tainted with fraud, nullified the
whole contract. Hall v. Underwriters Assn., 106 Mo.
476; McDermott v. M. W. A., 97 Mo. App. 636; Wil-
liams v. Life Ins. Co., 97 Mo. App. 449; Ashford v.
Mutual Life, 80 Mo. App. 638; Aloe v. Mutual Life,
147 Mo. 561; McDowan v. Supreme Council, 38 N. Y.
177; Wells v. Independent Order, etc., 25 N. J. 209;
Gowberg v. Western Assn. Co., 89 Pac. 130; Elliott v.
Ins. Co., 66 P. A. St. 22; Gilbert v. Ins. Co., 23 Wend.
43; Robertson v. Ins. Co., 88 N. Y. 541; Lewis v. Ins.

Co., 44 Conn. 73; Ins. Co. v. Laur, 97 S. W. 363; Gilbert v. Life Assn., 51 N. W. R. 148; Leffingwell v. Grand Lodge, etc., 53 N. W. R. 243, and long list of cases cited; McDowan v. Supreme Council, 38 N. Y. 177; Gowberg v. Western Assn. Co., 89 Pac. 130; Crossman v. Mass. Benefit Assn., 143 Mass. 435; Jewett v. Ins. Co., 112 N. W. 734; Miller v. H. F. Assn., 42 N. J. Eq. 458; Sweat v. Citizens Mutual, 78 M. 541; McCon v. R. C. Assn., 153 Mass. 373; Eaton v. Supreme Lodge, U. S. Circuit Court, Dist. Ohio, 29 N. E. R. 1123; A. O. U. W. v. Jesse, 50 Ill. App. 101; Lion v. Supreme Assn., 153 Mass. 83; Levill v. Royal Arc, 30 N. Y. Supp. 205.

*Brown & Gallivan* for respondent.

(1) The appellants received the November and December, 1906, assessment on or about December 14, 1906, kept the money, wrote the assured that it had the money, would hold it in abeyance until assured forwarded health certificate.    Holding the money is a waiver of the condition requiring the health certificate. Andrus v. Insurance Association, 168 Mo. 151.    (2) The appellants not only received and kept the November, 1906, assessment, for the non-payment of which when due it might have claimed a forfeiture, but it also received the January assessment and kept it, not saying one word about holding it in abeyance without receiving a health certificate as requested in its letter of December 20, 1906.    This conduct on the part of appellant is inconsistent with an intention to waive it and the trial court did not err in finding there was a waiver. Reed v. Bankers' Union of the World, 121 Mo. App. 419; Riley v. Ins. Co., 117 Mo. App. 235.    (3)    The January assessment was received on the 31st of January, 1907, and kept, and there is no notice that this assessment was held, only as the natural inference of law would be for the purposes for which it was sent, that to pay the January assessment.    Keeping the

money reinstates the policy. Reed v. Bankers' Union, supra; Andrus v. Ins. Co., supra; Leech v. Order of R. R. Telegraphers, 130 Mo. App. 19. (4) It is agreed that the proper officer of the appellant received and kept the November and December, 1906, assessment and wrote the same were held in abeyance. It is also agreed that this same officer received and kept the January, 1907, assessment without any statement as to how he held it. All of which constituted a waiver and plaintiff's tender of the money after suit was brought, is an attempt, too late, to back-track and prevent a waiver. Andrus v. Ins. Co., 168 Mo. 151; Wichman v. Ins. Co., 120 Mo. App. 58. (5) Forfeitures are not favored in law and the courts are always prompt to seize hold of any circumstances that indicate intentions to waiver a forfeiture. McMahon v. Maccabees, 151 Mo. 514; Harley v. Life Assn., 69 Mo. 380.

NORTONI, J.—This is a suit on a certificate of life insurance. Plaintiffs recovered and defendant prosecutes the appeal.

Defendant is a fraternal beneficiary association organized under the laws of another state but qualified and conducting the business of life insurance under the laws of Missouri. It appears the insured, who was the father of the two plaintiffs, became a member of defendant order a number of years ago and received from it a certificate of insurance whereby it agreed and undertook to pay the beneficiaries therein mentioned not exceeding two thousand dollars upon the prior death of the insured, provided he at all times fully complied with the conditions of the certificate, the constitution and laws of the order. Insured paid all of the assessments up to the date of his death in July, 1907, but omitted to pay the assessment falling due on or before November 30, 1906, until about two weeks thereafter.

It is provided in the contract of insurance that all assessments must be paid to the proper officers of the order on or before the last day of each month and in the event any such assessment is not paid when due, the insurance shall thereby become forfeited. But another provision of the contract goes to the effect that even after default in the payment of an assessment at the time it is due, the insurance vouchsafed in the certificate may be reinstated upon payment of all assessments then due if the insured within three months from such date shall execute and furnish to the order a certificate to the effect that he is then in good health. Further, the certificate required under the rules of the order amounts to a representation of warranty pertaining to the good health of the member and it is contemplated the insurance may be reinstated upon the faith of such warranties.

The insured for some reason defaulted or failed to pay his assessment No. 11, payable on November 30, 1906, and as a result thereof the certificate of insurance became forfeited on the following day, December 1st, of that year. On December 10th, defendant's supreme recorder notified the insured by letter that he had omitted to pay the assessment referred to and requested that he should kindly give the matter his attention. Together with this letter, the supreme recorder inclosed a proper blank for the execution of the contemplated health certificate. On December 14, 1906, plaintiff forwarded the amount of the assessment then due, $15.44, to defendant's supreme recorder, but omitted to execute the health certificate required from those in default.

It appears to be conceded in the case that the insured was then and had been for some time theretofore in an impaired condition of health; suffering with an ailment from which he afterwards died. The defendant order received the remittance of $15.44 so made December 14th to cover the preceding November assessment

and on December 20th wrote the insured to that effect but did not return the November assessment to him. Instead, the defendant's supreme recorder wrote the insured requesting him to fill up the reinstatement blank or health certificate and forward it to him. This letter concluded by saying, "As we have not received this reinstatement certificate from yourself, we will hold this money in abeyance until we hear from you." The insured made no answer to this letter whatever and paid no heed to the request for the health certificate The insured, still having failed to furnish a health certificate, paid the assessment levied against his insurance for January, 1907, and it is conceded the defendant order received such payment in due time on January 31, 1907.

There is nothing in the record to the effect that defendant declined to accept this January assessment, though it was unaccompanied by the health certificate referred to, nor that it held it in abeyance awaiting the health certificate. On February 6, 1907, defendant's supreme recorder wrote the insured calling his attention to the prior letter of December 20th requesting that he execute an application for reinstatement together with the health certificate and said, "We have never received this reinstatement certificate hence cannot retain you on our books as a good standing member. We believe this is the second time we have called your attention to the non-receipt of your reinstatement blank. Will you kindly attend to this at once?" On February 8th, defendant received from plaintiff the application for reinstatement requested which contained the health certificate. This application containing a warranty to the effect that insured was in good health at the time, that is on February 6th, is as follows:

"SUPREME LODGE BENEFICIARY JURISDICTION.

*Application for Reinstatement.*

"February 6, 1907.

"To the Supreme Lodge Ancient Order of United Workmen:

"I, W. W. Pinnell, holding Beneficiary Certificate No.————— of the Ancient Order of the United Workmen, having been suspended from all rights, benefits, and privileges of the order, and having forfeited all my rights as a member of the Order, by reason of the nonpayment of assessment No. 11, which suspension and forfeiture occurred within a period of three (3) months prior to the date of this certificate, and desiring to be reinstated in said order, as provided by the laws thereof, do hereby certify that I am, at this date, in sound bodily health, and that I agree that the reinstatement of myself as a member of the order based upon this certificate shall be valid and binding only upon the condition that the statement herein contained, relating to my bodily health, is true in every respect, upon the day and date hereof.    "W. W. PINNELL,

"Signature of Applicant."

Insured paid all assessments made thereafter until the month of July, 1907, when he died from the effects of a kidney trouble, which, it is admitted, had threatened his dissolution for about three years theretofore. It is conceded throughout the case that the insured was not in good health either at the time he defaulted with respect to the payment of the November assessment or at the time he executed the health certificate above set forth.

This defendant, being a mutual benefit association within the meaning of our laws, its contracts are not to be determined by reference to our statute touching warranties and representations in effecting insurance but instead it may invoke the doctrine that a representation as to good health is so material to the risk in entering

into a contract for life insurance as to amount to a warranty in fact which will defeat a recovery if it appears to have been untrue when made. It may therefore be conceded that if the insurance involved here were forfeited and so continued at the time the deceased made the false representation as to the condition of his health above set out, this of itself would so invalidate the contract as to defeat any recovery thereon whatever. [McDermott v. Modern Woodmen of America, 97 Mo. App. 636, 71 S. W. 833; Modern Woodmen of America v. Angle, 127 Mo. App. 94, 104 S. W. 297.]

However, the court found the fact as if, though the insurance had been forfeited on December 1, 1906, for the non-payment of the November assessment, the defendant had waived the forfeiture and reinstated the contract by receiving and retaining the assessments above mentioned when they were unaccompanied by the health certificate. There is no question in the case as to the competency of the officer of defendant to waive the forfeiture. It seems to be conceded throughout that the supreme recorder, by whose conduct the matter is to be determined, is possessed of full power in the premises, for, indeed, he is an officer of the supreme lodge, having complete jurisdiction over such matters. The only question, therefore, which we are to determine, is as to whether or not there is substantial evidence in the record tending to prove a waiver of the condition of the contract which forfeited the insurance on December 1st, for the court so found the fact to be. Succinctly stated, a waiver is said to be the intentional abandonment or relinquishment of a known right. [Fulkerson v. Lynn, 64 Mo. App. 649, 653; Reed v. Bankers' Union, etc., 121 Mo. App. 419, 426, 99 S. W. 55; West v. Platt, 127 Mass. 372.] Mr. Bishop says:

"Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of

the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards." Bishop on Contracts, sec. 792.

The matter of intention being the essential element to a waiver, it appears that the precise question which the court is called upon to consider is whether there is substantial evidence in the record tending to show that defendant did some act pertaining to the matter in controversy from which it may be reasonably inferred that it manifested an intention not to rely upon the forfeiture of the insurance. Furthermore judgment must be given on this question in accordance with the accepted doctrines of the law and established precedents in such cases. It is frequently said that equity abhors forfeitures and it may be said as well that they are not favorites even in courts of law. The policy of the law is not to aid the forfeiture of a right once established. [Lewine v. Knights of Pythias, 122 Mo. App. 547, 560, 99 S. W. 821; 3 Am. and Eng. Ency. Law (2 Ed.), 1086.]

There can be no doubt that, more or less influenced by this thought, the general doctrine obtains throughout the law of insurance to the effect that valuable rights shall not be denied on the ground of forfeiture, if slight evidence sufficiently indicates a purpose on the part of the one in whose favor the forfeiture is stipulated not to enforce it. In this view, the rule of decision is that though a forfeiture of the insurance contract has taken place, it will be treated as waived and the insurance reinstated if the insurer accepts a premium thereafter falling due and retains it for a sufficient length of time to indicate that it considered the insurance still in force. [Reed v. Bankers' Union, etc., 121 Mo. App. 419, 99 S. W. 55; Wichman v. Metropolitan Life Ins. Co., 120 Mo. App. 51, 96 S. W. 695; Andrus v. Fidelity, etc., Ins. Co., 168 Mo. 151, 165, 67 S. W. 582; 2 Bacon's Benefit Societies, sec. 431.] Mr. Bacon says:

"If the company receives the payment of the premium with the knowledge of the breach of the conditions of the policy, it will ordinarily be held to have waived the breach and be estopped from alleging such breach as a ground of forfeiture." [2 Bacon (3 Ed.), sec. 431.]

It appears in proof defendant received the November remittance from the insured amounting to $15.44 on or prior to December 20th, for it wrote him of that date that it would hold the money in abeyance until he had furnished the health certificate required. There can be no doubt that the insurance was forfeited on the first day of December by virtue of the contract and it. may be defendant should not be declared to have waived the forfeiture by the mere holding of this money a few days or a reasonable length of time for the health certificate to be furnished, but it appears that the health certificate was not finally furnished until the 6th or 8th of February thereafter. It seems that this of itself would indicate a purpose on the part of defendant not to enforce the provisions of the contract with respect to forfeiture. At any rate, under the established rule of decision in this state, defendant should have returned the assessment promptly or within a reasonable time at least or it will be treated as having waived the forfeiture. In Andrus v. Insurance Co., 168 Mo. 151, 165, 166, 67 S. W. 582, a case presenting one feature much resembling this one, our Supreme Court has said substantially, the insurer may not thus retain the assessment and thereafter insist on the forfeiture even though it communicated the fact to the insured that it held such payment on condition that a health certificate would be furnished. To the same effect is Reed v. Bankers' Union, etc., 121 Mo. App. 419, 99 S. W. 55. But to put aside entirely the question with respect to the assessment paid in December, which defendant said it retained in abeyance, it appears in the proof that the January, 1907, assessment was paid and defendant re--

ceived it within due time, on the 31st day of that month. No objection whatever was made to the receipt of this assessment. The health certificate mentioned had not been furnished at that time and no objection was predicated on that fact whatever. Indeed, it does not appear that defendant even wrote plaintiff it would hold this assessment in abeyance. Nothing to the contrary appearing, the circuit court, of course, was authorized to infer from the fact that defendant received and retained it that it accepted the same as though the insurance was still in force. There is an abundance of proof from which the court might infer defendant intended to waive the forfeiture.

But, it is said, conceding defendant had waived the forfeiture, it appears that by executing the health certificate on February 6, 1907, and furnishing it to defendant, the insured waived any right he might have had to insist that the insurance was then in force, for the reason he stated in such health certificate that he had been suspended from the benefits of the order and theretofore forfeited his rights as a member thereof. This argument is more specious than sound for it is certain that the law will not declare a forfeiture which defendant itself has seen fit to waive. If defendant had waived the forfeiture, as was found by the court, by its conduct prior to February 6th, then the act of the insured in furnishing a health certificate at that time is wholly unimportant, for the insurance was then in full force and the mere fact that the insured stated the insurance had theretofore been forfeited and requested reinstatement would not operate to destroy a valuable contract right then existing under the law. The Supreme Court of Georgia has heretofore expressed a like opinion on similar facts. See Massachusetts Benefit Life Association v. Robinson, 42 L. R. A. 261, 272.

The judgment should be affirmed. It is so ordered. All concur.